FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 25 2019 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
AMY KERNAGHAN, behalf of herself and
all others similarly situated,

                           Plaintiff,

    -against-

FORSTER & GARBUS, LLP, MIDLAND
FUNDING, LLC, MARK A. GARBUS,
and RONALD FORSTER,

                           Defendants.
------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CV-0204 (SJF)(AKT)

FEUERSTEIN, District Judge:

Plaintiff Amy Kernaghan ("Plaintiff" or "Kernaghan") commenced this action against defendants Forster & Garbus ("F&G"), LLP, Mark A. Garbus, and Ronald Forster (collectively, the "F&G Defendants"), and Midland Funding LLC ("Midland") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Presently before the Court is Midland's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and an agreement between the parties. *See* Motion, Docket Entry ("DE") [31]. Plaintiff has opposed the motion. After briefing on Midland's motion was completed and the motion was submitted, the F&G Defendants filed a "Notice to Join Motion to Compel Arbitration" stating that they "hereby join" in Midland's motion. *See* DE [35]. Plaintiff objects to the F&G Defendants' attempt to join in Midland's motion, arguing that these defendants are not entitled to enforce the arbitration clause. *See* Plaintiff's Notice of Objection, DE [36]. For the reasons set forth herein, Midland's motion to compel arbitration is granted.

**I. BACKGROUND**

The facts are taken from the Amended Complaint and are assumed to be true for the purposes of this motion. Amended Complaint ("AC"), DE [26]. In addition to the Complaint

and the attachments thereto, the Court also considers the attachments to Defendants' motion to compel arbitration. *See BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (noting that although extrinsic documents are not generally considered on a Rule 12 motion to dismiss, "it is proper (and in fact necessary) to consider such extrinsic evidence faced with a motion to compel arbitration").

Kernaghan incurred a debt through an account with Synchrony Bank/PC Richard, which debt was sold to Midland. The particulars of the account prior to its purchase by defendants are germane to the current motion and are provided in affidavits and supporting documents from (1) Angel Nayman, a Lead Litigation Analyst with non-party Synchrony Bank ("Synchrony"), formerly known as GE Capital Retail Bank, regarding the origination of the accounts, Affirmation of Angel Nayman ("Nayman Aff."), DE [34-4]; and (2) Sean Mulcahy, Operations Manager for MCM, regarding the acquisition of the account by Midland. Affidavit of Sean Mulcahy ("Mulcahy Aff."), DE [34-1].

**A.     The Account**

On or about December 18, 2011, Synchrony approved a credit card application in the name of Amy R. Kernaghan and issued a PC Richard & Son account (the "Account") in her name. Nayman Aff. ¶6. Synchrony's procedure upon opening accounts was to mail the cardholder the credit card and a copy of the credit card agreement governing the account by United States Postal Service. *Id.* ¶7. A contemporaneous record is created to document the mailing. *Id.* The procedure was followed in this instance, and a credit card and a copy of the effective credit card account agreement (the "Agreement") was mailed to Kernaghan at her address of record on or about December 18, 2011. *Id.* ¶8.

Synchrony has provided a copy of the Agreement that was sent to Kernaghan. Nayman Aff., Ex. A, DE [34-5]. The Agreement contains an express arbitration clause entitled "**RESOLVING A DISPUTE WITH ARBITRATION**" and including the following introductory language:

> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

Agreement at p. 2 (emphasis in original). A claim or dispute is subject to arbitration "if it relates to your account." *Id.* The cardholder may reject the arbitration restrictions by following the procedure set forth in the Agreement:

> **You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to [GE Capital Retail Bank]. This is the only way you can reject this section.**

Agreement at p. 3 (emphasis in original).

The arbitration provision also contains language whereby the cardholder agrees not to participate in a class action or bring suit on behalf of other accountholders:

> **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT A[N] ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT**

3

> **MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

Agreement at p. 3 (emphasis in original).

The arbitration provision of the Agreement is governed by the FAA and, to the extent state law is relevant, under Utah law. Agreement at p. 3. The balance of the Agreement is governed by federal law, and Utah law, to the extent state law applies. *Id.* at p. 2.

Synchrony maintains a record of any correspondence it receives from cardholders including requests to opt out of or reject an arbitration provision. Nayman ¶14. Synchrony has no record of having received such a request from Kernaghan. *Id.* Changes in terms to the Account were reflected in billing statements sent to Kernaghan and dated April 10, 2012 and March 11, 2015. Nayman Aff., ¶¶9-10. None of the changes in terms affected the arbitration provisions set forth in the Agreement. Synchrony has no record that any mailings on the Account were returned as undeliverable. *Id.* ¶10.

According to Synchrony's records, Kernaghan's last payment on the Account was posted on November 20, 2014. Nayman Aff. ¶11. The account was charged off by Synchrony on June 8, 2015 and subsequently sold to Midland. *Id.* ¶¶13, 15. Kernaghan's Account was assigned to defendant Midland when it purchased her charged-off debt as part of a portfolio of such debts from Synchrony in August 2015. *See* Mulcahy Aff., ¶¶ 5-6. Defendants provide documents evidencing the purchase. *Id.*

## B. The Complaint

Plaintiff alleges that she is a "consumer," and that both Midland and F&G defendants are "debt collectors" within the meaning of the FDCPA. AC ¶¶6, 12, 16, 19, 30. As to the relationship between Midland and the F&G defendants, Plaintiff claims that Midland issued work standards, directives and/or guidelines to F&G, AC ¶¶32, 38, 46, 55, that all the actions

"taken by F&G were taken by F&G as the 'debt collector' for the 'debt collector' Midland," *id.* ¶¶33, 39, 47, 56, and that Midland is vicariously liable for the actions of F&G. *Id.* ¶¶34, 40, 48, 57.

On or about January 11, 2017, F&G, on behalf of Midland, sent Kernaghan the letter forming the basis of this litigation. AC ¶7 & Ex. A (the "Letter"). The Letter states that "[a] judgment has been duly entered in court against you," sets forth a "Balance Due as of January 11, 2017" of $2,994.38, identifies both the "Creditor to Whom Debt is Owed" and the "Current Owner" as Midland Funding LLC." Neither the Amended Complaint nor the declarations provided by Defendants set forth any details regarding how and when Midland obtained the judgment against Kernaghan.

Plaintiff alleges various FDCPA claims including, *inter alia,* that Defendants violated the statute by not notifying her that the balance due would increase by operation of the automatic accumulation of post-judgment interest under New York law. Midland now moves to compel arbitration pursuant to the arbitration provision in the credit card Agreement in effect for the account held by Kernaghan.

## II. LEGAL STANDARD

Courts deciding motions to compel arbitration apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003). The court considers all relevant admissible evidence and draws all reasonable inferences in favor of the non-moving party. *See Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016) (citations omitted). Where the arbitrability question can be decided as a matter of law based on the undisputed facts, the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities*

*Master Fund Ltd.,* 661 F.3d 164, 171 (2d Cir. 2011) (quoting *Bensadoun,* 316 F.3d at 175). Typically, the court is called upon to decide whether the parties agreed to arbitrate and whether the claims at issue fall within the scope of the parties' agreement. *See Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). The party seeking arbitration must establish that an agreement to arbitrate existed. *See Hines v. Overstock.com, Inc.,* 380 F. App'x 22, 24 (2d Cir. 2010).

## III. DISCUSSION

### A. Valid Agreement to Arbitrate

In opposition to the motion, Kernaghan does not challenge the existence or scope of the arbitration clause contained in the Agreement. Her lone argument is that Midland has failed to make a *prima facie* showing that the Agreement was provided to her by mail. She claims that the declaration submitted by Nayman, a Synchrony Litigation Analyst, does not satisfy Midland's burden of proof because Nayman did not personally mail the Agreement, did not have personal knowledge of Synchrony's mailing procedures in place at the time of the mailing, and sets forth insufficient details of the bank's mailing procedures. Pl. Mem. in Opp. at 2. She does not challenge the admissibility of the Nayman Declaration, only its sufficiency.

Nayman's relevant statements regarding Synchrony's general mailing procedures are that (1) upon opening an account, it mailed the cardholder [both] the credit card and a copy of the appropriate credit card agreement via the United States Postal Service; and (2) that a contemporaneous record is created documenting the mailing. Nayman Decl. at ¶7. Nayman further stated that this procedure was followed as to Kernaghan, and that the credit card and Agreement were mailed to Kernaghan at her address of record on or about December 18, 2011. *Id.* ¶8. These statements are sufficient to establish mailing. Nayman makes his declaration as

a corporate representative and upon review of Synchrony's business records. He attests to the mailing process employed by Synchrony when issuing new credit cards as a general matter, and further states that, according to its records, the process was completed as to Kernaghan's account.

Plaintiff claims that there can be no *prima facie* showing of mailing absent an affidavit establishing "that the affiant had personal knowledge of Synchrony Bank's mailing procedures at the time of the alleged mailing of the agreement." Pl. Mem. in Opp. at 2 (citing *Meckel v. Cont'l Res. Co.,* 758 F.2d 811 (2d Cir. 1985)). Plaintiff's examination of what may constitute "personal knowledge" is cursory. In support, she provides a block quotation from a case where the affiant had experience as a mail sorter.[1] The court in that case found the affiant had "personal knowledge," but in no way suggested that a witness was required to have hands-on experience in the mail room in order to attest to a mailing. Plaintiff does not acknowledge that qualified witnesses may make admissible statements based on their review of business records. *See Biggs v. Midland Credit Mgmt., Inc.,* No. 17-CV-340, 2018 WL 1225539, at *4 (E.D.N.Y. 2018); *see also* FED R. EVID. 803(6) (absent untrustworthiness, a record "made at or near the time . . . by someone with knowledge, [if] kept in the course of a regularly conducted activity of a business , . . [and if made as] a regular practice of that activity," is admissible upon the "testimony of the custodian or another qualified witness"). Specifically in the context of FDCPA cases, affidavits of corporate representatives have been found to be sufficient to establish mailing. *See, e.g., Marcario v. Midland Credit Mgmt., Inc.,* No. 17-cv-414, 2017 WL 4792238, at *3 (E.D.N.Y. Oct. 23, 2017) (accepting affidavit of VP of Collections made upon review of records kept in the

---

[1] Although Plaintiff attributes the quotation to *Meckel,* it does not appear in that case. A Westlaw search finds the quotation in *Stein v. Am. Gen. Life Ins. Co.,* 665 F. App'x 73, 76 (2d Cir. 2016) (summary order).

7

ordinary course of business); *Wolin v. Midland Credit Mgmt.,* No. 15-CV-6996, 2017 WL 3671176, at *2 (E.D.N.Y. Aug. 24, 2017) (affidavit of Synchrony Lead Litigation Analyst made upon review of business records was admissible and sufficient to establish mailing); *Beattie v. Credit One Bank,* No. 15-CV-1315, 2016 WL 4203511, at *3 (N.D.N.Y. Aug. 9, 2016) ("[s]worn affidavits of corporate officers are sufficient proof of mailing because customary mailing practices, even if proven by circumstantial evidence, can serve to demonstrate that the agreement was actually mailed"). There is no requirement that the affiant either personally perform or oversee the mailing, and Plaintiff cites no caselaw to support such a proposition. Upon review of the case law and the declarations provided by Midland, the Court finds that it has established mailing of the Agreement to Kernaghan.

Typically, establishing that a mailing was completed creates a rebuttable presumption that the mailing was received. Kernaghan provides no reason to overcome the presumption of receipt. Indeed, she does not claim that she did not receive a copy of the Agreement, perhaps understanding that any such affirmative statement would be belied by her use of the credit card mailed with the Agreement. Midland has established that it mailed the Agreement containing the arbitration provision to Kernaghan and that mailing is presumed to have been received by her.

**B. Enforceability of Arbitration Provisions**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA mirrors the "strong federal policy favoring arbitration as an alternative means of dispute resolution," *Ragone v. Atl. Video at the Manhattan Ctr.,* 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation and citation omitted), and serves to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter*

8

*Reynolds Inc. v. Byrd,* 470 U.S. 213, 219, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original). The rigorous enforcement of arbitration agreements "holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (quoting *CompuCredit Corp. v. Greenwood,* 565 U.S. 95, 98, 132 S. Ct. 665, 181 L.Ed.2d 586 (2012) (internal quotation marks and citation omitted)). Courts analyzing arbitration agreements in FDCPA cases have found those claims to be appropriate for arbitration. *See, e.g., Biggs,* 2018 WL 1225539, at *5; *Shetiwy v. Midland Credit Mgmt.,* 959 F. Supp. 2d 469, 475 (S.D.N.Y. 2013); *Fedotov v. Peter T. Roach & Assocs., P.C.,* No. 03 CIV. 8823, 2006 WL 692002, at *3 (S.D.N.Y. Mar. 16, 2006).

As discussed *supra,* it has been established that Kernaghan was sent a written copy of the Agreement containing the arbitration provision. The agreements contained instructions for opting out of that provision, but Kernaghan did not do so. Based on this record, the Court finds that Kernaghan agreed to the arbitration provision.

Having found that the parties agreed to arbitrate, the Court briefly addresses the whether the claims in this case fall within the scope of the arbitration clause. Plaintiff does not contest the enforceability of the arbitration provision, which states that it applies to any claim or dispute "if it relates to your account." Where the arbitration clause is broad, as in this case, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations

under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks and citation omitted). As there is no suggestion that the presumption of arbitrability has been overcome and it is clear that Kernaghan's FDCPA claim arises out of Midland's efforts to recover amounts owed as a result of charges made by her on the credit card, her claim is covered by the arbitration provision.

**C. Are Defendants Valid Assignees of the Agreement?**

Plaintiff does not challenge that Midland is the valid assignee of the Agreement or that it is otherwise precluded from exercising the arbitration provision. To the contrary, Plaintiff has acknowledged that Midland is the assignee of the original creditor. *See* Plaintiff's Notice of Objection at 1, DE [36]. Accordingly, as Midland is a valid assignee of the Agreement and that Agreement contains an enforceable arbitration provision, Midland's motion to compel arbitration is granted.

The F&G Defendants also seek to compel argument by way of filing a one-page, post-briefing "Notice to Join Motion to Compel Arbitration" purporting to join in Midland's motion. Plaintiff objected, claiming that under Utah law, an agent such as F&G cannot enforce the terms of the Agreement for its own benefit. *See* Plaintiff's Notice, DE [36]; *see also Fericks v. Lucy Ann Soffee Trust,* 2004 UT 85, 100 P.3d 1200, 1205-06 (Utah 2004) (noting that under Utah law, generally "only parties to the contract may enforce the rights and obligations created by the contract" (internal quotation marks and citations omitted)); *but see Ellsworth v. Am. Arbitration Ass'n,* 2006 UT 77, 148 P.3d 983, 989 n.11 (Utah 2006) (finding that a nonsignatory to an arbitration agreement may enforce or be bound by that agreement under five theories including, *inter alia,* agency). The F&G Defendants did not respond to Plaintiff's objection.

The issue of whether the F&G Defendants have standing to compel arbitration has not been adequately briefed or presented to the Court. Thus, to the extent the F&G defendants Notice can be construed as a motion to dismiss, it is denied.

### D. Class Action Allegations

Plaintiff's class action claims against Midland are clearly precluded by the arbitration clause in the Agreement. Accordingly, the arbitration as to Midland shall be limited to Kernaghan's individual claim.

## IV. CONCLUSION

Defendant Midland's motion to compel arbitration, DE [20], is granted. Plaintiff is directed to arbitrate her claims against Midland on an individual basis. To the extent the F&G Defendants' Letter, DE [35], may be construed as a motion to compel arbitration as to the claims against them, that motion is denied.

This action is <u>stayed</u> pending completion of the arbitration. Accordingly, the conference scheduled for May 22, 2019 is adjourned without date. **The parties are ordered to electronically file a joint status report with the Court on the <u>earlier</u> of (1) no later than fourteen (14) days after the completion of arbitration; or (2) July 26, 2019.**

**SO ORDERED**.

                                                       /s/
                                                       Sandra J. Feuerstein
                                                       United States District Judge

Dated: Central Islip, New York
        February 25, 2019